UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KTU Worldwide, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Buck Turner Paulsen, LLC, <br> Buck Turner Paulsen Capital LLC, <br> Buck Turner Paulsen Construction, LLC, <br> BRJ Investments, Christine Clavenna d/b/a Kitchens by Christine, Leader Builders Group, LLC, and Ryan K. Dean, <br><br> Defendants. | Case File No. 1:19-cv-2534 |

**COMPLAINT**

Plaintiff KTU Worldwide, Inc. ("KTU"), for its Complaint against Defendants Buck Turner Paulsen, LLC, Buck Turner Paulsen Capital, LLC, Buck Turner Paulsen Construction, LLC, BRJ Investments, LLC, Christine Clavenna d/b/a Kitchens by Christine, Leader Builders Group, LLC, and Ryan K. Dean, states and alleges as follows:

**The Parties**

1. KTU is a South Dakota corporation with its corporate headquarters and principal place of business in Aberdeen, South Dakota.

2. Buck Turner Paulsen, LLC ("BTP") is an Illinois company organized under the laws of Texas. Its address is 4805 Wallbank Ave., Downers Grove, IL 60515. BTP is 50% owned by Ryan K. Dean and 50% owned by BRJ Investments.

3. Buck Turner Paulsen Capital, LLC, ("BTP Capital") is an Illinois company organized under the laws of Delaware. Its address is 233 Wacker Dr., Chicago, IL 60606. BTP Capital is 100% owned by Ryan K. Dean.

4. Buck Turner Paulsen Construction, LLC ("BTP Construction") is an Illinois company organized under the laws of Delaware. Its address is 3733 Curtiss St., Downers Grove, IL 60515. A search of publicly available information does not indicate the membership of BTP Construction.

5. BRJ Investments, LLC ("BRJ Investments") is an Illinois company organized under the laws of Delaware. Its address is 250 Northwest HWY Suite 330, Park Ridge IL 60068. A search of publicly available information does not indicate the membership of BRJ Investments.

6. Christine Clavenna is an individual residing at 3311 Ivywild Ln, New Lenox, IL 60451. Clavenna operated a business under the name "Kitchens by Christine," located at 3733 Curtiss St., Downers Grove, IL 60515.

7. Leader Builders Group, LLC ("Leader Builders Group") is an Illinois company organized under the laws of Illinois. Its address is 3733 Curtiss St., Downers Grove, IL 60515. A search of publicly available information does not indicate the membership of Leader Builders.

8. Ryan K. Dean is an individual residing at 4805 Wallbank Ave, Downers Grove, IL 60515.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. 1331 and 1338(a), because claims alleged in the Complaint arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.* The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

10. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Research of publicly available information indicates that the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. Venue is proper in Illinois under 28 U.S.C. § 1391. A substantial portion of the events giving rise to the claims and injuries suffered by KTU occurred in this judicial district. In addition, all Defendants either reside in this state or regularly conduct business in this state.

**Background Facts**

12. The foregoing allegations are incorporated in the claims below.

13. KTU is the developer, owner, and franchisor of the Kitchen Tune-Up® Franchise System. Under KTU's System, independently owned franchisees offer and sell on-site wood restoration and repair services utilizing the specialized methods and products developed by KTU to restore cabinetry, paneling, furniture, and all other wood surfaces. Franchisees also utilize the System to offer granite sealing and other services and products relating to home improvement and remodeling. Franchisees will provide services and products in homes, offices, and other commercial businesses.

14. KTU franchisees conduct business under the names "Kitchen Tune-Up," and "KTU Woodcare Services." The mark Kitchen Tune-Up® has been registered with the United States Patent and Trademark Office. A true and correct copy of the trademark registration certificate is attached as Exhibit A.

15. In March 2016, Ryan K. Dean reached out to KTU to express an interest in purchasing an existing KTU franchise, although he indicated he had no prior experience in remodeling.

16. In June 2016, KTU and the existing franchisee entered into a Consent to Transfer Franchise Area Agreement with BTP Capital. Ryan Dean signed the agreement on behalf of BTP Capital and represented himself to be the 100% owner and manager. The existing franchisee and BTP Capital thereafter entered into an asset purchase agreement.

17. KTU and BTP Capital executed a new Franchise Agreement for a ten-year term with an effective date of June 13, 2016. A true and correct copy of that agreement is attached as Exhibit B.

## The Franchise Agreement

18. The foregoing allegations contained in paragraphs 1 through 17 are incorporated in the claims below.

19. Pursuant to the Franchise Agreement, KTU provided BTP Capital with the right to operate a Kitchen Tune-Up® franchise within a designated area. Paragraph 2(A) of the Franchise Agreement states that the rights and privileges granted in this agreement were personal to BTP Capital, which was not permitted to use those rights and privileges outside of its designated franchise area.

20. Paragraph 2(A) of the Franchise Agreement further provided that if BTP Capital were to offer, promote, or sell and Services or Products within the boundaries of another franchisee's protected area, such sales would be subject to a 10% penalty as set forth in the Agreement.

21. Pursuant to Paragraph 2(B) of the Franchise Agreement, BTP Capital agreed that it did not have the right to subfranchise or sublicense the rights granted in the Agreement. This is further noted in Paragraph 5(A) of the Franchise Agreement, where BTP Capital agreed that KTU

was the exclusive owner of the Kitchen Tune-Up names, marks, and system, and that no right, express or implied, was granted to subfranchise or license others to use the marks or system.

22. Pursuant to Paragraph 4(C) of the Franchise Agreement, BTP Capital agreed to pay Royalty Fees equal to 7% of its monthly Gross Revenue, to be calculated by monthly operating reports due by the 5th day of each month. The Franchise Agreement further provided that a late fee of $25 and interest would apply to each delinquent payment or operating report.

23. Paragraph 6(M) of the Franchise Agreement stated that:

> YOU [BTP Capital] shall operate YOUR Franchise Business in a manner, which maximizes Gross Revenue consistent with sound marketing and business practices, and YOU will not engage in any business practice, which reduces YOUR Gross Revenue. YOU cannot refer customers wanting Services and/or Products customarily provided by Kitchen Tune-Up franchisees, to any Kitchen Tune-Up franchisee, or another business, without OUR [KTU] prior written consent. If YOU do not provide the Service and/or Products for any reason, YOU must follow the provisions in section 6(A)(20).

The referenced provision in section 6(A)(20) required BTP Capital to advise KTU of sales leads or potential customers not served by the franchisee for any reason.

24. Paragraph 6(N) of the Franchise Agreement prohibited BTP Capital from transferring any interest in the Franchise Business or any interest in BTP Capital without prior written consent from KTU.

25. Paragraph 9(A) of the Franchise Agreement restricted BTP Capital's right to operate any competing business:

> Unless otherwise authorized in writing by KTU, YOU shall, during the term of this Agreement, devote sufficient time and attention, and YOUR best efforts, to ensure the proper management and operation of Your Franchise Business. YOU shall not, directly or indirectly, for YOURSELF, or through, on behalf of, or in conjunction with any other person or entity divert, or attempt to divert, any business or customer of YOUR Franchise Business to any competitor, by direct or indirect inducement, or otherwise, or perform, directly or indirectly, any other act which is injurious or prejudicial to the good will associated with the System. Further, neither YOU, nor any members of YOUR family residing in YOUR home, . . . or if YOU are a limited

liability company, none of YOUR members, or members of their families residing in their homes, . . . shall, directly or indirectly, own any interest in, operate, or be connected in any manner with, or own any stock, not publicly held and traded, in any business providing, in whole or in part, any of the wood care and/or wood restoration services, cabinet refacing and door replacement, hardware replacement, the sale and/or installation of new cabinets, closet, cabinet, garage and other organizers, or any other Kitchen Tune-Up Services and Products within the Franchised Area specified in sections 2 and 28, and, in any area, within fifty (50) miles of the boundaries of that Franchised Area.

26. Pursuant to Paragraph 9(B) of the Franchise Agreement, this restriction on competing businesses extends for two years after the effective date of termination.

27. Paragraph 9(C)(2) of the Franchise Agreement also specifically provides that, upon termination, the BTP Capital must take all actions necessary to disassociate its business with its former Kitchen Tune-Up franchise, including transferring to KTU all phone numbers used in connection with the marks and the franchise.

28. Pursuant to Paragraph 10 of the Franchise Agreement, BTP Capital agreed that any violation of this agreement would cause immediate and irreparable harm warranting injunctive and equitable relief. BTP Capital also agreed that it would pay costs, expenses, and attorneys' fees incurred by KTU in enforcing the Agreement.

29. In conjunction with the Franchise Agreement, Ryan Dean signed a Personal Guaranty in which he provided a personal guarantee of prompt payment of all fees due under the Franchise Agreement, as well as a guarantee of performance of all obligations required of the franchisee, including reasonable attorneys' fees and costs incurred in KTU's enforcement of the Franchise Agreement. A true and correct copy of the Personal Guaranty is attached hereto as Exhibit C.

**Conduct Giving Rise to the Complaint**

30. The foregoing allegations contained in paragraphs 1 through 29 are incorporated in the claims below.

31. On or about November 7, 2018, a customer called KTU's offices to complain about a remodeling job for which Ryan Dean was the General Contractor. When KTU contacted Dean about this complaint, he stated that he was not familiar with the name of this customer and insisted that he merely "loaned" the customer his subcontractors, had no other role in the remodeling project, and that the customer purchased all of the materials directly.

32. When KTU followed up with the customer about his complaint, it learned that the customer was in fact Ryan Dean's neighbor, who again reiterated that Dean was the General Contractor and, although the vehicles and business cards all referenced Kitchen Tune-Up, Dean had instructed the customer to make out checks to "BTP Construction." Looking into the details further, KTU found that Dean had not provided any information on this project or customer.

33. When confronted about these additional facts, Dean said the customer was a friend and Dean was "just doing him a favor." Dean claimed that BTP Construction was not a real company, but was just a name used to open a warehouse in Downers Grove, Illinois. Dean deflected questions about why he requested the customer make out checks to BTP Construction and refused to provide an answer.

34. Concerned about the inconsistencies in Dean's responses, KTU initiated an audit of BTP Capital's franchise. During the course of this audit, KTU discovered that sometime after signing the Franchise Agreement, BTP Capital transferred 100% of its rights in its franchise to BTP, a company co-owned by Ryan Dean and BRJ Investments. KTU did not consent to this

transfer, as required by the Franchise Agreement, and was not even provided notice of the transfer when it occurred.

35. KTU discovered during the audit that, despite a requirement in the Franchise Agreement that BTP Capital establish a bank account associated with the operation of the franchise, Dean was making deposits into at least two bank accounts that were not associated with BTP Capital.

36. KTU also discovered during the audit that Dean's total deposits over a 29 month period were at least $1,759,535.52, despite the fact that at least two months of financials were missing. Dean reported total sales to KTU for the same period of only $980,334.00. This under-reporting of sales demonstrates that there has been almost a 50% under payment of royalties due under the Franchise Agreement.

37. In addition to Dean's and BTP Capital's under reporting, KTU's audit also revealed at least six different territory violations based on sales that were made inside the protected territory of other KTU franchisees.

38. Additional investigation revealed other related entities for which Dean and associates used KTU's service marks and operated competing businesses. For example, KTU discovered a facebook page controlled by Christine Clavenna under the name "Kitchens by Christine" in which she prominently displays the Kitchen Tune-Up® service marks and logo in connection with kitchen remodeling services. Dean had previously represented to KTU that Clavenna was an employee of his, and she had signed an employee non-disclosure and non-competition agreement with KTU. The address listed on Clavenna's facebook page was the same address used by Dean for BTP Construction. Yet another business, Leader Builders Group, LLC,

which lists Dean as a manager, shares the same address. Leader Builders Group provides goods and services in competition with those offered by KTU franchises.

### Termination of the Franchise Agreement

39. The foregoing allegations contained in paragraphs 1 through 38 are incorporated in the claims below.

40. On March 1, 2019, KTU provided Dean and BTP Capital with a Notice of Default and Termination pursuant to the Franchise Agreement. The letter noted that the conduct uncovered during KTU's audit established multiple breaches of BTP Capital's Franchise Agreement and constituted grounds for termination. KTU offered to enter into a Mutual Termination Agreement provided that Dean comply with a series of requirements, including identifying all business entities in which he was involved, providing missing deposit information, and paying all missing royalties and penalties, as well as the legal and accounting fees incurred during the investigation. A true and correct copy of the March 1, 2019, termination letter is attached as Exhibit D.

41. Dean and BTP Capital did not agree to the terms set forth in the March 1, 2019, Notice of Default and Termination. KTU therefore sent a letter dated March 28, 2019, noting that the Franchise Agreement terminated as of March 27, 2019. This letter provided Dean and BTU Capital with a list of post-termination obligations under the Agreement, which included the cessation of any Kitchen Tune-Up® business or competing business and payment of all amounts due and owing, including unpaid royalty fees and penalties. A true and correct copy of the March 28, 2019, termination letter is attached as Exhibit E.

42. Dean and BTP Capital have not complied with the post-termination obligations. Defendants have continued to operate a competing business using the same phone numbers

associated with the marks and the terminated Kitchen Tune-Up franchise in violation of the Franchise Agreement and Personal Guaranty.

## COUNT I – BREACH OF CONTRACT

### (BTP Capital)

43. The foregoing allegations contained in paragraphs 1 through 42 are incorporated in the claims below.

44. The Franchise Agreement between KTU and BTP Capital constitutes a valid and lawfully binding contract.

45. KTU has performed all conditions, covenants, and promises required to be performed by it pursuant to the Franchise Agreement.

46. BTP Capital has breached the Franchise Agreement by its conduct, including but not limited to its (1) unauthorized transfer of franchise rights; (2) under reporting of sales and resulting underpayment of royalties; (3) unauthorized sales in protected territories; (4) diversion of customers to competing businesses; (5) failing to perform post-termination obligations; (6) continuing to operate a competing business using the same phone numbers associated with the marks and the terminated franchise; and (7) failure to pay amounts due and owing related to the above violations.

47. As a direct result of BTP Capital's breaches, KTU has been injured in an amount to be proven at trial, but in no event less than $75,000, plus costs, disbursements, interest, and attorneys' fees.

## COUNT II – BREACH OF CONTRACT

### (Ryan K. Dean)

48. The foregoing allegations contained in paragraphs 1 through 47 are incorporated in the claims below.

49. The Personal Guarantee between KTU and Ryan K. Dean constitutes a valid and lawfully binding contract.

50. KTU has performed all conditions, covenants, and promises required to be performed by it in connection with the Personal Guarantee.

51. Dean has breached his Personal Guarantee by his conduct, including but not limited to failing to provide prompt payment of amounts owed by the franchisee and failing to guarantee performance of post termination obligations, including transfer to KTU of the phone numbers associated with the marks and the terminated franchise.

52. As a direct result of Dean's breaches, KTU has been injured in an amount to be proven at trial, but in no event less than $75,000, plus costs, disbursements, interests, and attorneys' fees.

## COUNT III – TORTIOUS INTERFERENCE

### (BTP, BRJ Investments, Ryan K. Dean)

53. The foregoing allegations contained in paragraphs 1 through 52 are incorporated in the claims below.

54. The Franchise Agreement between KTU and BTP Capital constitutes a valid and lawfully binding contract.

55. BTP, Dean, and BRJ Investments, as 50% owner of BTP, all had knowledge of the Franchise Agreement between KTU and BTP Capital.

56. Through their conduct, BTP, BRJ Investments, and Dean have unlawfully caused BTP Capital to breach the Franchise Agreement by causing it, *inter alia*, to transfer rights in the agreement without KTU's consent.

57. BTP, BRJ Investments, and Dean initiated that breach in secret without informing KTU and did so with the improper intent to collect the economic benefit of BTP Capital's Franchise Agreement.

58. As a direct result of BTP's, BRJ Investments' and Dean's tortious interference with that contract, KTU has been injured in an amount to be proven at trial, but in no event less than $75,000, plus costs, disbursements, interests, and attorneys' fees.

### **COUNT IV – VIOLATION OF LANHAM ACT 15 U.S.C. § 1125(A)**

**(BTP, BTP Construction, Christine Clavenna, Ryan K. Dean)**

59. The foregoing allegations contained in paragraphs 1 though 58 are incorporated in the claims below.

60. Defendants' conduct and actions as set forth above constitutes unfair competition and misappropriation of KTU's valuable goodwill, reputation, and business property.

61. Defendants' have used KTU's marks without authorization and have also used the phone numbers previously associated with the terminated Kitchen Tune-Up franchise in a manner that is likely to cause confusion, mistake or deception as to the source or affiliation of Defendants goods and services.

62. Defendants' unauthorized use of KTU's marks and phone numbers allows Defendants to receive the benefit of KTU's goodwill, which KTU has established at great labor and expense.

63. Defendants' acts constitute a false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT V – TRADEMARK INFRINGEMENT

### (BTP, BTP Construction, Christine Clavenna, Ryan K. Dean)

64. The foregoing allegations contained in paragraphs 1 through 63 are incorporated in the claims below.

65. KTU has registered its marks with the United States Patent and Trademark Office, and has continuously advertised its marks in connection with the Kitchen Tune-Up® Franchise System.

66. KTU's marks are famous and well-known within the home improvement industry and general public.

67. The right to use KTU's federally registered marks derives solely from the terms of the Franchise Agreements entered into with its franchisees.

68. Defendants have used in commerce KTU's federally registered mark in connection with the sale, offering for sale, distribution and advertising of goods and services in violation of 15 U.S.C. §1115.

69. Defendants' use of KTU's marks in connection with such goods and services is likely to cause confusion, to cause mistake or to deceive.

70. Defendants' infringement is willful, with full knowledge and in conscious disregard of KTU's rights and with intent to trade off KTU's goodwill in its mark.

71. By reason of the foregoing, KTU hereby asserts a claim for injunctive and monetary relief pursuant to 15 U.S.C. §§ 1116 and 1117.

## **COUNT VI – CIVIL CONSPIRACY**

### **(All Defendants)**

72. The foregoing allegations contained in paragraphs 1 through 71 are incorporated in the claims below.

73. Defendants were aware of the existence and terms of the Franchise Agreements, including KTU's ownership of goodwill and federally registered marks, the penalties for selling in other KTU franchisees' protected territories, the obligation to pay royalties on all revenue generated and the non-compete and post-termination restrictions on the franchisee.

74. With full knowledge of the rights, obligations and restrictions in the Franchise Agreement, Defendants agreed to develop a plan and scheme to use KTU's marks without KTU's knowledge or approval and to divert business away from BPT Capital in order to avoid detection of its under reporting to KTU and the sale of competing goods and services without KTU's knowledge.

75. The purpose and objective of Defendants' coordinated conduct was to offer goods and services related to home improvement that benefited from KTU's marks while evading the royalty fees that would have been required to compensate KTU under the Franchise Agreement.

76. In furtherance of the conspiracy described above, Defendants acted in coordinated effort to divert sales of goods and services from BTP Capital's Kitchen Tune-Up® franchise.

77. As a result of Defendants' conduct and actions, KTU has sustained damages in the form of lost revenue and damage to its goodwill and business reputation in an amount to be determined at trial, but in no event less than $75,000.

## COUNT VII – UNJUST ENRICHMENT

**(All Defendants)**

78. The foregoing allegations contained in paragraphs 1 through 77 are incorporated in the claims below.

79. As a result of the conduct and actions set forth above, Defendants diversion of sales has enriched them at KTU's expense, and it would be unjust under the circumstances for Defendants to retain the benefit of that conduct.

80. As a result of Defendants' conduct and actions, KTU has sustained damages in the form of lost revenue and damage to its goodwill and business reputation in an amount to be determined at trial, but in no event less than $75,000.

## COUNT VIII – ACCOUNTING/AUDIT

**(All Defendants)**

81. The foregoing allegations contained in paragraphs 1 through 80 are incorporated in the claims below.

82. Because of Defendants coordinated efforts to use different entities and bank accounts to subvert KTU's rights to royalties under the Franchise Agreement, KTU is not able to determine how much money is due under BTP Capital's Franchise Agreement.

83. KTU is entitled to an accounting and audit of all entities owned, operated, or connected to Defendants in order to review records and determine licensing fees and royalties that should have been remitted to KTU under the terms of the Franchise Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, KTU Worldwide, Inc. respectfully requests that the Court grant the following relief:

A. A temporary restraining order and preliminary and permanent injunction against all Defendants, their agents, servants, employees, and all others in active concert or participation with them, preventing them from infringing KTU's marks, using phone numbers associated with the terminated franchise, or selling any competitive goods or services within 50 miles of the protected territory identified in BTP Capital's Franchise Agreement, and requiring Defendants to transfer to KTU all phone numbers associated with its marks;

B. For a judgment against all defendants, jointly and severally, for all damages incurred in an actual damages in an amount to be determined at trial, but in no event less than $75,000;

C. For an order that Defendants submit to an accounting of their financial records for purposes of determining unreported sales and award such damages in an amount to be determined at the time of trial for any underreporting of license fees or royalties to KTU;

D. For an award to KTU of interest, costs, expenses and attorneys' fees incurred in connection with its investigation and enforcement of legal rights in this action; and

E. For such other and further relief as the Court deems just and appropriate.

Dated: April 15, 2019

Respectfully submitted,
*/s/ Michael D. Educate*

**BARACK FERRAZZANO
 KIRSCHBAUM & NAGELBERG LLP**

Michael D. Educate (IL #6318246)
200 W. Madison Street, Suite 3900
Chicago, IL 60606

Telephone: (312) 984-3100
Facsimile: (312) 984-3150
michael.educate@bfkn.com

**GRAY, PLANT, MOOTY,
  MOOTY & BENNETT, P.A.**

Michael Gray (MN #175602)
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 632-3078
Facsimile: (612) 632-4078
mike.gray@gpmlaw.com

**ATTORNEYS FOR PLAINTIFF**